# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF BERKSHIRE, SEPTEMBER TERM 1841, AT LENOX.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE,  } Justices.
Hon. CHARLES A. DEWEY,

CHARLES SPURR & others *vs.* WYLLIS BARTHOLOMEW.

Where a committee of the proprietors of a township lay out, by metes and bounds, a lot to B., on the original right of A., and such laying out is recorded in the proprietors' books, and no adverse claim to the lot is made for nearly thirty years ; this is *primâ facie* evidence that the laying out was right and regular, although there is no other evidence that A. was one of said proprietors, and although his name is not in the list of proprietors which is found in their books.

Though a grantee enters upon more land than is included in his deed, yet if the grantor afterwards indorses on the deed a recital that it was intended to convey all the land upon which the grantee has entered, and covenants to warrant the whole to the grantee, his heirs and assigns ; this is evidence that the grantee had a right to enter upon all the land, and will authorize him and his heirs to defend their possession under the grantor's title.

TRESPASS for breaking, &c. the plaintiffs' close in Mount Washington, called the twelve acre lot, and cutting down trees.

It appeared, from the report of *Wilde*, J. before whom the case was tried, that the *locus in quo* was wild land, but connected with a pasture belonging to the plaintiffs' ancestor, who had formerly cut timber and firewood thereon, and who, and those claiming under him, had maintained a fence, for more than forty years, on the northerly side thereof, as hereinafter stated in the

opinion of the court.   The easterly side of said lot bounded on the westerly line of the town of Sheffield.

It was proved or admitted that the defendant had recently cut wood on the lot in question.

The plaintiffs offered in evidence the following entry in the records of the original proprietors of Mount Washington, which was signed by two of a committee of three who had been appointed by said proprietors to set off and assign lots : "May 28th, 1789.   Then surveyed and laid out to David Benton twelve acres of land adjoining to Sheffield line, and is laid out on the original right of John Fellows, in the second division, being butted and bounded as followeth : viz. beginning at a heap of stones in Sheffield west line, westward from said Benton's dwellinghouse ; thence north, 73 ° west, 3 chains to a chestnut staddle marked, and stones to it ; thence south, 23 ° west, 14 chains and 56 links to a stake and stones ; thence north, 73 ° west, 5 chains and 50 links to a walnut tree marked, at the foot of the mountain ; thence south, 41 ° 26' west, 6 chains and 4 links to a chestnut staddle marked ; thence south, 73° east, 13 chains and 36 links to a stake and stones in Sheffield line ; thence north, 14 ° east in Sheffield line, 19 chains and 80 links to the first mentioned corner."

The plaintiffs produced no evidence that John Fellows was an original proprietor, and his name did not appear in the list of such proprietors contained in their records.   The defendant, therefore, objected to the admission of the above entry in evidence.   But the judge ruled, that as said location was allowed to be recorded, and was assigned to the right of Fellows, by a committee of the proprietors appointed for that purpose, it might be presumed that he was one of the proprietors.

It was proved that David Benton died in 1797, leaving six heirs, among whom his estate was divided.   The lot in question was not set off to either of them, but was set to his widow as part of one third of his estate, which he devised to her, to hold during her life.   After her death, his son, David Benton, by deed, dated February 18th, 1801, released to Stephen Benton, another son, certain real estate, which was thus described : "All

and every part of the land or real estate lying in Sheffield, which was willed by David Benton to Sarah Benton, his wife, and which, by virtue of said will, I now in any way claim, or hereafter may claim. Also all that my sister Lydia, wife of Samuel Taylor, had, by virtue of said will ; she having before conveyed the same to me." The defendant objected, that this deed did not convey the lot in question, which is situate in Mount Washington. But the judge, for the purpose of the trial, ruled that said deed conveyed all David's right to that part of his father's estate which was assigned to the widow under his will.

The plaintiffs also introduced a deed from said Stephen Benton to Benjamin Sheldon, dated June 13th, 1803, and from said Sheldon to Atwater Cook, dated August 26th, 1811, conveying land bounded by the line between Sheffield and Mount Washington, "to the southeast corner of land deeded by Asa Sparks to David Benton ; thence westerly on the north line of land which is the south line of said parcel of land deeded by said Sparks to said David Benton, now owned by said Sparks, to the foot of Mount Washington ; thence northerly, by the foot of said mountain, to the southwest corner of the Haskins farm now occupied by Wyllis Bartholomew, which is the northwest corner of said piece of land deeded by said Sparks to David Benton." The defendant proved that the Haskins corner was thirty or forty rods east of the corner of the twelve acre lot, and contended that the deed did not cover the *locus in quo.* The judge ruled, for the purpose of the trial, that the deed did cover said twelve acre lot.

The plaintiffs introduced a deed, dated April 3d, 1815, from Atwater Cook to Thaddeus B. Cook, (the father of one of the plaintiffs,) of a farm, the westerly bound of which is the line of the town of Mount Washington, which is the east line of the twelve acre lot : Also an indorsement on said deed by Atwater Cook, signed, sealed and acknowledged by him on the 10th of November, 1830, reciting that the westerly course to Mount Washington line, in said deed, "did not extend so far westwardly as was intended, not knowing at that time where said line was, but was

supposed to be further west, to the foot of Mount Washington west, and to contain all the land that is in the town of Mount Washington west of Sheffield line, and to contain all that part of a certain piece of land deeded by Asa Sparks to David Benton, and by Stephen Benton to Benjamin Sheldon, and from said Sheldon to said Atwater Cook, the grantor, which was agreed upon by the within parties." Said indorsement concluded thus : " I therefore do covenant with the within grantee [Thaddeus B. Cook] his heirs and assigns, to warrant these premises according to the true meaning of the within deed."

The defendant contended that this indorsement was not a deed sufficient to convey the twelve acre lot ; but the judge ruled otherwise for the purpose of the trial.

To all these rulings the defendant excepted.

The defendant then introduced two deeds, dated January 8th, 1830, from Robert Campbell and Jeremiah Dibell, conveying to him lands which included the twelve acre lot : Also a deed, dated July 1st, 1800, from Robert Campbell, senior, to said Robert Campbell, of " all the land which is to be laid to the right of land in Mount Washington, whereof Jonathan Petitt was the original proprietor, be the same more or less : " Also a deed, dated March 10th, 1779, from Jonathan Petitt to Robert Campbell, of " one right of land in Tauconnock mountain, viz. lot No. 17, with the undivided, he (said Campbell) paying the cost that hath or shall arise upon said land : " Also a deed from John Dibell to Jeremiah Dibell.

The defendant introduced proof that Jonathan Petitt and John Dibell were original proprietors of Mount Washington ; and also introduced a copy of a survey bill of undivided land laid out to Robert Campbell, senior, and Jeremiah Dibell, covering that part of the twelve acre lot on which the alleged trespass was committed, (with other lands,) upon the original right of said Jonathan Petitt and John Dibell. This survey was signed by two only of a committee of three, appointed by the proprietors. The plaintiffs objected that two proprietors could not legally make a joint pitch ; but this objection was overruled.

By consent of the parties, a verdict was returned for the plaintiffs, which was to be set aside, if the evidence was not sufficient to sustain it, or if the proceedings at the trial were wrong.

This case was argued at the last September term.

*Barnard & Bishop*, for the plaintiffs.

*Sumner*, (*Ensign* was with him,) for the defendant.

WILDE, J. This was an action of trespass *quare clausum*, and the only question is, whether the plaintiffs' title, as proved at the trial, is sufficient to support the action. The damages claimed are inconsiderable, and a verdict was taken for the plaintiffs by consent. The plaintiffs rely on a title by possession, and contend also that they have derived a valid title and right of property from the original proprietors of the land.

It was proved that the plaintiffs, and those under whom they claim, had maintained a fence separating the twelve acre lot, on which the trespass is alleged to have been committed, from the lot adjoining northerly, which was extended to the foot of a steep and precipitous mountain, to prevent the cattle from passing round between the farms, and to save the expense of erecting a fence on the westerly side of the lot. The evidence of the plaintiffs' possessory title is not fully reported ; it was, however, such as would fully maintain an action of trespass against a stranger, or any one not having a right of entry ; but not such as would by law constitute a disseizin of the true owner. And so it was decided at the trial. The defendant thereupon gave in evidence two deeds to him from Robert Campbell and Jeremiah Dibell, dated January 8th, 1830, which deeds included the twelve acre lot ; and it was proved that Campbell and Dibell had acquired their title to the said lot by certain pitches by them made in the rights of John Dibell and Jonathan Petitt, who were original proprietors of Mount Washington. These pitches were made at different times, from 1818 to 1828, and were recorded in the proprietors' book of records, May 20th, 1828.

Several objections have been made to the regularity of these

proceedings, which we have not thought it necessary to con-
sider ; being of opinion that the plaintiffs' title, derived from the
proprietors of the township, under a prior location and division
of the common lands, is the older and better title.    This title is
derived from a pitch or location made by one David Benton, in
the year 1789, and laid out on the original right of one John Fel-
lows.    It includes the twelve acre lot, according to a survey of a
committee of the proprietors, a return of which was made by them,
and was regularly recorded in the proprietors' book of records.
It is objected, that there is no sufficient evidence to prove
that John Fellows was a proprietor.    But we are of the opin-
ion, that a pitch or location made in his right, surveyed as it was
by a committee of the proprietors, and a return thereof made by
them, and recorded in the proprietors' book of records, amounts
to sufficient *primâ facie* evidence of the right claimed.    No ad-
verse claim was interposed for nearly thirty years.    After the
death of David Benton, the twelve acre lot was assigned to his
widow, as a part of the estate devised to her for life, and, on her
decease, it descended to his heirs, from one of whom the plain-
tiffs derive their title.

The presumption from these facts is, that the location was
rightly and regularly made ; nothing appearing to the contrary.
Fellows might have been a proprietor, although his name does
not appear by the records of the proprietors, except in this in-
stance, and although at this distance of time no direct evidence
of the fact can be adduced.    The case, therefore, must be de-
cided upon presumptive evidence ; and this appears to the court
to be satisfactory.    The ancient claims of parties are admissible,
as presumptive evidence of title ; and such evidence is strong,
when accompanied with a long, uninterrupted possession of any
part of the estate claimed.    3 Dane Ab. 506.    So it has been
held, that if a party had been permitted to vote in a proprietors'
meeting, that was good presumptive evidence to prove that he was
a proprietor, although after a lapse of many years he might be un-
able to produce any other evidence of title.    Every reasonable
presumption in favor of ancient claims is to be allowed, especial-

ly when followed by possession ; and we are of opinion that the presumptive evidence in the present case is sufficient to establish the right of John Fellows as one of the proprietors of Mount Washington.

Another objection to this location was made at the trial, on the ground that the return of the survey was not signed by al the members of the committee.   This objection, however, if well founded, would not avail the defendant, because the location under which *he* claims is open to the same objection.   And if both locations be invalid for this reason, the plaintiffs would be entitled to maintain their action on their possessory title.

Then an objection was made to the deed from David Benton to Stephen Benton, (both of whom were heirs of David Benton senior,) and it was contended that, by the description, the twelve acre lot was not included.   This objection is immaterial, because the plaintiffs claim under a deed from Stephen Benton to Benjamin Sheldon ; and Stephen's share in the property, as one of the heirs of his father, passed by that deed ; which is sufficient to sustain the present action.   There appears to be a mistake in the latter deed as to Cook's corner ; but taking the whole description together, we think it may be construed so as to include the *locus in quo.*

Again, it is objected, that the deed from Atwater Cook to Thaddeus B. Cook, the father of one of the plaintiffs, does not include the twelve acre lot ; and it is true that this deed is not a regular and formal conveyance of that lot.   But by the indorsement on the deed, we are of opinion that Thaddeus B. Cook had a right to enter on that lot, and that he, during his life, and the plaintiffs, since his death, had a right to defend their possession under the title of Atwater Cook.

But if these objections to the plaintiffs' derivative title from David Benton were well founded, still we think this action is maintainable on another ground.   If the pitch made by David Benton upon the right of John Fellows was valid, and vested in him a legal title in severalty, then the pitch afterwards made, under which the defendant claims title, was void, and his title fails.   And the plaintiffs, having possession of the *locus,* may

well support their action without any further proof of title This view of the case renders the supposed defects, in the plaintiffs' derivative title from Benton, immaterial.

*Judgment on the verdict.*